*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0142P (6th Cir.)
File Name:  00a0142p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DENNIS L. MARTIN,
    *Plaintiff-Appellant,*

    *v.*

BARNESVILLE EXEMPTED
VILLAGE SCHOOL DISTRICT
BOARD OF EDUCATION,
    *Defendant-Appellee.*



No. 99-3263

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 97-00992—Algenon L. Marbley, District Judge.

Argued:  March 14, 2000

Decided and Filed:  April 21, 2000

Before:  MERRITT, DAUGHTREY, and MAGILL,[*]
Circuit Judges.

---

[*] The Honorable Frank J. Magill, Circuit Judge of the United States
Court of Appeals for the Eighth Circuit, sitting by designation.

1

———————————

**COUNSEL**

———————————

**ARGUED:** Samuel N. Lillard, MOWERY & YOUELL, Dublin, Ohio, for Appellant. John C. Albert, CRABBE, BROWN, JONES, POTTS & SCHMIDT, Columbus, Ohio, for Appellee. **ON BRIEF:** Samuel N. Lillard, MOWERY & YOUELL, Dublin, Ohio, for Appellant. John C. Albert, CRABBE, BROWN, JONES, POTTS & SCHMIDT, Columbus, Ohio, for Appellee.

———————————

**OPINION**

———————————

MERRITT, Circuit Judge. Plaintiff Dennis L. Martin appeals the district court's order granting summary judgment in favor of defendant, Barnesville Exempted Village School District Board of Education. On appeal, plaintiff alleges that defendant discriminated against him on the basis of a perceived disability – namely alcoholism – in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* and Ohio Revised Code § 4112. Because the record demonstrates that plaintiff did not receive an assignment as a school bus driver because he was caught drinking on the job, no violation of the ADA occurred. We therefore affirm the judgment of the district court.

Plaintiff was hired by defendant as a bus driver in 1984. He is a member of the union, known as the Barnesville Association of Classified Employees, OEA/NEA. In 1991 he bid for and was awarded a custodial position with defendant. Shortly after beginning his custodial duties, Robert Miller, the president of the school board, observed plaintiff drinking beer while on the job at an elementary school. When confronted by Miller, plaintiff denied the allegation and left the building, even though his shift was not over. Upon completion of an investigation, the school board recommended that plaintiff be

drinking problem" based on the Last Chance Agreement he signed after the beer drinking incident at the school. We will assume without deciding that defendant does perceive that plaintiff suffers from alcoholism, a disability, and that plaintiff has established a prima facie case of disability. We then turn to defendant's stated reason for rejecting plaintiff's bids. Defendant stated that plaintiff was denied the jobs as a bus driver and garage worker in 1994 based on the 1991 beer drinking incident during work hours at an elementary school. The defendant asserts that the law should not require it to put a person guilty of drinking on the job in the driver's seat of a school bus hauling children.

The ADA does not protect plaintiff from his own bad judgment in drinking on the job. The plaintiff cannot force defendant to hire him as a school bus driver when there is a serious risk that he may again drink on the job, have an accident and kill a group of school children. Any suggestion to the contrary is absurd on its face. For a federal court to interpret the ADA to require a school board to hire as a school bus driver a person guilty of drinking on the job and thereby run the risk of an accident would raise serious constitutional problems. If an accident should occur and students were injured or killed, the school board would be subject to large compensatory and punitive damages and open itself to the moral condemnation of the community. Therefore, even if we assume that plaintiff has established a prima facie case of discrimination, defendant has articulated a legitimate, non-discriminatory reason for its actions. Plaintiff has not demonstrated that this stated reason is a pretext for any unlawful discrimination.

For the foregoing reasons, we affirm the district court.

42 U.S.C. § 12102(2). Plaintiff denies that he has a physical or mental impairment and instead relies on either the second or third criteria to establish that he is "disabled;" that is, "having a record of such impairment" or being "regarded as" having such an impairment.[3] The district court granted summary judgment to defendant because it found that plaintiff had not established that his disability -- whether perceived or real -- "substantially limits one or more major life activities." While we do not necessarily disagree with the district court's reasoning, we affirm on a different ground.

This Court has held that there is a distinction between taking an adverse job action for unacceptable misconduct and taking such action solely because of a disability, even if the misconduct is "caused" by the disability. *Maddox v. University of Tennessee*, 62 F.3d 843, 847 (6th Cir. 1995). In *Maddox*, an assistant football coach at the University of Tennessee was fired after an arrest for driving while intoxicated. The coach argued that his alcoholism was a covered disability and that his conduct of driving while impaired resulted from his disability, thereby precluding the university from firing him. This court assumed without deciding that alcoholics may be "individuals with a disability" for purposes of the ADA. The court held that the ADA specifically provides that an employer may hold an alcoholic employee to the same performance and behavior standards to which the employer holds other employees "even if any unsatisfactory performance is related to the alcoholism of such employee," thereby clearly distinguishing the issue of misconduct from one's status as an alcoholic. 42 U.S.C. § 12114(c)(4).

*Maddox* controls this case. Plaintiff makes much of the fact that defendant represented throughout the arbitration and Ohio state court proceedings that plaintiff had an "admitted

---

[3]Plaintiff stated that he signed the Last Chance Agreement, in which plaintiff admitted to a "drinking problem," because it was the only way he could keep his job.

---

terminated for consuming alcohol at work, leaving his post and for conduct in violation of the stated "drug-free workplace" policy. Plaintiff ultimately admitted that he had been drinking a beer while on duty on school grounds. After intervention by the union, plaintiff was allowed to keep his position if he signed a document entitled "Last Chance Agreement." The terms of the agreement required plaintiff (1) to admit to an unspecified "drinking problem;" (2) successfully to complete an approved alcohol rehabilitation program; (3) to accept a four-week suspension without pay and (4) to submit to alcohol and drug testing upon request for two years. Plaintiff signed the agreement and there is no dispute that he has at all times complied with the terms of the Last Chance Agreement. (Plaintiff was never asked to submit to a drug test during the two-year period and defendant acknowledges that it never had any reason to believe that plaintiff abused alcohol during that period.)

In December 1994, plaintiff submitted bids for a part-time bus driver position and a part-time bus garage worker position. Although plaintiff was the most senior worker to bid for the positions, defendant rejected him, citing the 1991 beer incident. Plaintiff filed a grievance with the union and in August 1995, after a binding arbitration hearing in compliance with the union's collective bargaining agreement with defendant, plaintiff was awarded the bus driver and garage worker positions on which he had bid in December 1994. The arbitrator based his decision solely on the terms of the bargaining agreement between the union and defendant, finding that the school board had not demonstrated that plaintiff posed a safety threat and therefore the seniority provisions of the labor agreement could not be overridden. Arbitrator's Opinion and Award, Aug. 10, 1995.

Defendant appealed the arbitrator's decision to the Belmont County Common Pleas Court, which reversed and vacated the labor arbitration award. *In the Matter of Barnesville Exempted Village School Dist. Bd. of Educ. v. Miller*, 1997 Ohio App. LEXIS 5253 (Belmont Cty. 1997). On appeal, the

Ohio Court of Appeals reversed the Court of Common Pleas and reinstated the arbitrator's award. *Barnesville Exempted Village School Dist. Bd. of Educ. v. Barnesville Ass'n of Classified Employees*, 123 Ohio App. 3d 272, 704 N.E.2d 36 (1997). The Court of Appeals reversed the Court of Common Pleas, holding that the arbitrator's award must be upheld unless the decision bears "no connection" with the labor contract. 123 Ohio App. 3d at 276, 704 N.E.2d at 38. The Court of Appeals found that the arbitrator carefully weighed the competing concerns of safety and seniority and the state court could not overrule the decision simply because it disagreed with the outcome. *Id.* Defendant appealed to the Ohio Supreme Court, which did not allow the discretionary appeal. *Barnesville Exempted Village School Dist. Bd. of Educ. v. Barnesville Ass'n of Classified Employees*, 81 Ohio St. 3d 1421, 688 N.E.2d 1046 (1998). Plaintiff was awarded the positions he sought in December 1994[1] and began his duties in February 1998. He was not awarded back pay or any other remuneration for lost wages or benefits.

Plaintiff filed this suit under the federal and state disability discrimination laws in September 1997, during the pendency of the arbitration proceedings. Both parties have filed briefs asserting that the arbitration proceeding under the collective bargaining agreement does not bar our review of plaintiff's federal discrimination claim. They cite *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998) (terms of collective bargaining agreement must contain "clear and unmistakable" language waiving specific federal statutory rights) and *Bratten v. SSI Servs., Inc.* 185 F.3d 625 (6th Cir. 1999)(same). We therefore do not decide the res judicata issue. We note that because plaintiff was subsequently awarded the positions he sought in his federal complaint as a result of the arbitration proceedings, plaintiff's request in his complaint that he be

awarded the positions of bus driver and garage worker is moot and the only issue before us is whether plaintiff should be awarded compensatory and punitive damages, including back pay for the period from December 1994 to February 1998, due to defendant's alleged discrimination.

To prevail in a disability discrimination case, plaintiff must present either direct evidence of discrimination or present a prima facie case of discrimination. To establish a prima facie case under the Americans with Disabilities Act, plaintiff must show: (1) he was "disabled" under the ADA; (2) he was otherwise qualified to perform the essential functions of the job; (3) he suffered an adverse employment action and (4) a nondisabled person replaced him. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. The burden then shifts back to plaintiff to demonstrate that the employer's stated reason is a pretext for discrimination, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2]

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "disability" is defined as:

1. a physical or mental impairment that substantially limits one or more major life activities;

2. a record of such impairment; or

3. being regarded as having such an impairment.

---

[1] During the pendency of the arbitration proceedings and subsequent state court proceedings, plaintiff continued to bid on available bus driver and garage worker positions when they became available. His bids were rejected each time.

[2] Both federal and Ohio disability discrimination actions require the same analysis. *Little Forest Med. Ctr. V. Ohio Civ. Rights Comm'n*, 61 Ohio St. 3d 607, 575 N.E.2d 1164, 1167 (1991).