**Florence SOLETRO, Plaintiff,**

v.

**NATIONAL FEDERATION OF INDEPENDENT BUSINESS, Defendant.**

**No. 4:00–CV–1222.**

United States District Court, N.D. Ohio, Eastern Division.

Jan. 31, 2001.

Richard L. Goodman, Richard L. Goodman, Niles, for Florence Soletro, Plaintiffs.

Douglas B Schnee, McDonald, Hopkins, Burke & Haber, William J O'Neill, McDonald, Hopkins, Burke & Haber, Cleveland, for National Federation of Independent Business, Defendants.

## OPINION

GWIN, District Judge.

On December 17, 2000, Defendant National Federation of Independent Business ("National Federation") filed a motion for summary judgment [Doc. 25]. Plaintiff Florence Soletro opposes the motion. For the reasons that follow, the Court grants the defendant's motion for summary judgment.

### I. Background

In this case, Plaintiff Soletro alleges that Defendant National Federation violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., when it fired her on December 16, 1999. In addition to her Title VII claim, Soletro says National Federation discharged her because of age, disability, and retaliation in violation of the American's with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq. Regarding her ADA claim, Soletro argues the defendant failed to accommodate her medical condition. Regarding her FMLA

claim, Plaintiff Soletro says National Federation retaliated because Soletro took a medical leave of absence.

In response, National Federation first argues that the plaintiff never requested a FMLA leave of absence. Second, and more important, Defendant National Federation says Plaintiff Soletro ultimately received a twelve week FMLA leave, but was unable to return to work at its conclusion and remains unable to return to work to this date. With regard to her ADA claim, Defendant National Federation says Soletro remains completely disabled and is not able to carry out her responsibilities, even with accommodation. Finally, Defendant National Federation says that Soletro's breach of contract claim fails because she was an at-will employee and National Federation could terminate her employment for any reason not contrary to law.

National Federation is a California nonprofit corporation that represents small business owners before federal and state legislative and executive branches of government. Soletro began working for National Federation in 1987. On January 25, 1998, Soletro became a territory manager, signing a standard territory manager contract. This contract acknowledged that Soletro was an at-will employee without tenure. A territory manager sells new and renewal memberships to businesses in a specified geographic area. Soletro primarily worked out of her home. Kathie Barratt, National Federation's Canton, Ohio, division manager supervised Soletro.

In April 1999, Soletro began to experience back pain.[1] Although Soletro says she told Barratt about her health problems, she did not request a leave of absence. While continuing to work, Soletro claims her health worsened. Soletro contends she told her supervisor, Barratt, several times that she might need time off because her health was failing. In an affidavit submitted with her memorandum in opposition, Soletro states that Barratt threatened to replace her if she took time off. Barratt denies this.

During this period, Soletro's sales production worsened. On May 3, 1999, Barratt sent Soletro a letter informing her that she had not met her territory goals for new sales and renewals.[2] In the letter, Barratt told Soletro that if she did not meet her territory goals of five new sales and fourteen renewal sales per week by May 14, 1999, she would be placed on probation. Barratt's letter also suggested that Soletro take medical leave if her heath problems were preventing her from meeting her territory goals.

Soletro did not achieve the territory goals set by Barratt in the May 3 letter. On May 17, 1999, Barratt placed Soletro on probation through June 12, 1999. While on probation, Soletro needed to obtain four new sales and fifteen renewal sales per week. Barratt told Soletro that she would lose her territory manager position if she did not meet these goals.[3]

On May 24, 1999, Jeffrey L. Stychno, D.C., gave National Federation a brief report that said Soletro was undergoing treatment for back pain. Because Stychno's letter did not say that Soletro was unable to work, Barratt wrote Soletro on

---

1. Soletro had been in three automobile accidents since September, 1997.

2. On August 14, 1998, Barratt also sent a letter to Soletro warning her that she was not meeting her territory goals. In that letter, Barratt informed Soletro that if she did not improve "to an acceptable level (5 new sales, 13 renewal sales per week) for the remainder of the quarter further steps will be taken which may result in further disciplinary action up to and including termination. Your performance will be assessed again on September 5 to determine what progress has been made to improve." Defendant's Exhibit D. No follow-up correspondence to this letter appears in the record.

3. The relevant part of the letter states: "If these [probationary] goals are not met, other NFIB sales career opportunities will be discussed depending on your level of production and developmental needs." Defendant's Exhibit F. The clear intent of the letter is that Soletro must meet the probationary goals or be moved into another sales position.

June 7, 1999. In her letter, Barratt requested that Soletro send any additional relevant facts to National Federation's human resources department. Soletro did not submit any additional materials.

On September 9 and 10, 1999, Soletro was unable to work because of severe bronchitis and asthma. Doctor D.G. Krishnarao submitted a form to National Federation clearing Soletro to return to work after the illness.

In the summer quarter of 1999, Soletro failed to meet the territory goals that Barratt had given her. Supervisor Barratt tried to contact Soletro to discuss her failure to meet her goals, but was unable to reach her. On September 23, 1999, Barratt demoted Soletro to a membership representative position effective September 27, 1999 .[4]

Unbeknownst to Barratt, Soletro had become ill with anxiety and bronchial spasms. On September 21, 1999, she was hospitalized. On September 22, 1999, Dr. Michael T. Ciletti faxed a letter to National Federation stating Soletro needed two weeks off from work to recover.

On September 29, 1999, Anita Clark, a National Federation employee benefits specialist, placed Soletro on Family and Medical Leave retroactive to September 21. Clark instructed Soletro to have her physician submit appropriate certification paperwork to continue receiving Family and Medical Leave.

Soletro received twelve weeks of Family and Medical Leave. Her leave expired on December 16, 1999. She was unable to

return to work after her leave expired.[5] On December 29, 1999, Angela Slate, National Federation's employee benefits director, wrote Soletro informing her that National Federation was terminating her employment, effective December 16, because of her inability to return to work.

On November 15, 1999, Soletro filed a charge of discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC"). She claimed discrimination based on disability. On February 9, 2000, Soletro filed a charge of discrimination with the Tennessee Human Rights Commission and the EEOC. This claim alleged discrimination based on age, disability, and retaliation.

Plaintiff Soletro has filed suit alleging violations of various federal statutes and claims based on state law. In Count I, she alleges a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the American's with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*[6] In Count II, Soletro alleges discrimination based on age and disability. In Count III, she alleges retaliatory discharge based on age and disability. In Count IV, Soletro alleges National Federation committed an intentional tort by discharging her in the manner in which it did.

The Court considers the defendant's motion below.

## II. Summary Judgment Standard

A court may grant summary judgment only if the materials properly before the

---

4. While the specific differences between a membership representative and a territory manager are unclear, it is certain that a membership representative is a less prestigious position. A membership representative has less freedom to conduct sales within a given territory. *See* Defendant's Exhibit A (Soletro Deposition) at 75–76. Also, a membership representative does not receive the same base salary that a territory manager receives. *Id.*

5. On December 14, 1999, Dr. Ciletti faxed the following note to National Federation:

Florence has been reporting to multiple health care providers with intense symptoms which have been assessed as disabling. She is unable to resume her job at present.

Defendant's Exhibit S.

6. The Court reads Count I as the plaintiff requesting relief under the federal statutes for discriminatory action taken against her and for relief based on a state law claim for breach of contract.

court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). In deciding whether the moving party has met this burden, a court must view the facts and all inferences drawn from them in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

A factual dispute precludes summary judgment only if it is material, that is, if it relates to a matter essential to adjudication. The dispute must concern facts that, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if proven at trial a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street*, 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

*60 Ivy Street*, 822 F.2d at 1436 (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505.

### III. Plaintiff's Affidavit

As a preliminary matter, the Court decides whether Soletro's affidavit can be considered. Defendant National Federation argues that Soletro's affidavit cannot be used because it contradicts and substantially supplements her prior deposition testimony. Defendants Reply Brief at 5 n. 4.

A party cannot contradict earlier testimony by filing an affidavit with different testimony after a party has moved a court for summary judgment. *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986). "If a witness, who has knowledge of a fact, is questioned during her deposition about that fact, she is required to 'bring it out at the deposition and [cannot] contradict her testimony in a subsequent affidavit.'" *Holt v. Olmsted Township Bd. of Trs.*, 43 F.Supp.2d 812, 817 (N.D.Ohio 1998)(quoting *Reid*, 790 F.2d at 460). However, a court can consider an affidavit that merely supplements testimony given in a deposition. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir.1996)(when an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when ruling upon a summary judgment motion); *Stubl v. T.A. Systems, Inc.*, 984 F.Supp. 1075, 1091 n. 19 (E.D.Mich.1997).

Soletro's affidavit supplements her earlier deposition testimony. Her affidavit does not directly contradict her earlier testimony. The affidavit principally relates that Barratt threatened Soletro. At the deposition, the defendant never directly

asked Soletro whether Barratt had threatened her. Soletro's affidavit does not directly contradict a question that was never asked.

■ Employees exercising their rights under the FMLA must give notice to their employers. 29 C.F.R. § 825.303. As the Sixth Circuit has recognized, "nothing in the statute places a duty on an employer to affirmatively grant leave without such a request or notice by the employee. Rather, to invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Brohm v. JH Properties, Inc.,* 149 F.3d 517, 523 (6th Cir.1998). In other words, to qualify for FMLA leave, an employee must not only have a serious health condition, she must also communicate adequate information to inform the employer that she is requesting leave for that serious health condition.

While the employee need not mention the FMLA by name, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Id.* at 523 (quoting *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 764 (5th Cir.1995)). As the Sixth Circuit has held, a plaintiff cannot establish an FMLA claim "unless he notifies his employer of his condition and requests relief during his employment." *Hammon v. DHL Airways, Inc.,* 165 F.3d 441, 451 (6th Cir. 1999).

In her deposition, Soletro admits she never asked Barratt for leave from work and she admits she got along with Barratt.[7] While from April 1999, Soletro told Barratt about her painful back and that she was thinking of taking time off, she did not request time off. Soletro's affidavit

does not contradict any of these admissions.

Nevertheless, Defendant National Federation understood that Soletro had a right to time off under the FMLA. On September 29, 1999, National Federation itself placed Soletro on Family and Medical Leave retroactive to September 21, 1999.

The Court will consider Soletro's affidavit in making its decision on the defendant's motion for summary judgment.

### IV. Analysis

The Court discusses the defendant's motion regarding each of the federal statutes or state law causes of action raised by the plaintiff.

#### A. Age and Sex Discrimination

Soletro abandons her claims with respect to age and sex discrimination. Plaintiff's Memorandum in Opposition at 3. Because Plaintiff Soletro has withdrawn these claims, the Court gives summary judgment to Defendant National Federation on the claims.

#### B. Family and Medical Leave Act

Under the FMLA, an eligible employee is entitled to twelve weeks of leave during any twelve month period for a serious health condition that makes the employee unable to perform the functions of her job. 29 U.S.C. § 2612(a)(1)(D). In addition, any eligible employee who takes leave is, upon return from such leave, entitled to be restored to her position of employment or to an equivalent position. 29 U.S.C. § 2614(a)(1). There is no right to reinstatement if the employee is unable to return to work at the end of that period:

If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health

---

**7.** Soletro's testimony was as follows:
 Q: Okay. Throughout the time that Kathie Barratt was your supervisor, did you two get along?
 A: I don't think we were the best of buddies, but we got along.

 Q: Would you say there was a personality conflict between you sometimes?
 A: Maybe, if that's what you'd call it.
 Soletro Deposition at 77.

condition, the employee has no right to restoration to another position under the FMLA. However, the employer's obligations may be governed by the Americans with Disabilities Act (ADA).[8] 29 C.F.R. § 825.214(b).

The job protection benefits provided under the FMLA—to be restored to the same or a similar position at the end of the twelve-week period—depend on the employee's ability to assume that position at the end of the period. 29 U.S.C. § 2614(a)(1); 29 C .F.R. § 825.214(b); *see also Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 784–85 (6th Cir.1998) (summary judgment granted where it was undisputed that the plaintiff was unable to return to work during the FMLA period); *Green v. Alcan Aluminum Corp.*, No. 98–3775, 1999 WL 1073686, at *2 (6th Cir.1999); *Beckendorf v. Schwegmann Giant Super Markers, Inc.*, No. Civ.A. 95–3822, 1997 WL 191504, at *3 (E.D.La. Apr.21, 1997), *aff'd*, 134 F.3d 369 (5th Cir.1997) (no duty to reinstate employee who could not perform job after twelve weeks); *Urbano v. Continental Airlines, Inc.*, No. Civ. A. H–95–3508, 1996 WL 767426, at *4 (S.D.Tex. Nov.1, 1996), *aff'd*, 138 F.3d 204 (5th Cir.1998) (reinstatement not required where employee could not perform former job at the end of FMLA leave because of lifting restrictions).

On September 21, 1999, Soletro began her FMLA leave. On December 14, 1999, Soletro's physician, Dr. Ciletti, faxed a letter to National Federation saying that Soletro was unable to return to work as of that date because of continuing medical symptoms. Soletro received twelve weeks of Family and Medical Leave. Her leave expired on December 16, 1999. She was unable to return to work after her leave expired.[9] On December 29, 1999, Angela Slate, National Federation's employee benefits director, wrote Soletro informing her that National Federation was terminating her employment, effective December 16, because of her inability to return to work.

■ Soletro does not dispute she was unable to return to work when her twelve weeks of FMLA-protected leave expired on December 16, 1999. In her deposition, Soletro testified that she was unable to work and, by mid-December of 1999, no doctor had released her to return to work. She testified that she remains unable to return to work. As Soletro was not able to return to work after twelve weeks of FMLA leave, National Federation was within its rights to terminate her. The Court holds that National Federation did not discharge Soletro in retaliation.

As the Sixth Circuit's decision in *Cehrs v. Northeast Ohio Alzheimer's Research Center* makes clear, where the employee shows no ability to return to work, her claim under the FMLA fails. *Cehrs*, 155 F.3d at 784–85; *see also* 29 C.F.R. § 825.214(b). Unless Plaintiff Soletro can make a claim for retaliation, she fails to make a FMLA claim because she was able to return to work after the 12–week FMLA leave.

An employer may not retaliate against employees who exercise their rights under the FMLA. 29 U.S.C. § 2615.

In her complaint, Soletro alleges Defendant National Federation retaliated against her. First, Soletro claims that National Federation retaliated against her by demoting her from a territory manager position to a membership representative position. Soletro characterizes this action as retaliation for taking leave protected under the FMLA.

Florence has been reporting to multiple health care providers with intense symptoms which have been assessed as disabling. She is unable to resume her job at present.
Defendant's Exhibit S.

---

**8.** Soletro's ADA claim is addressed in the next section.

**9.** On December 14, 1999, Dr. Ciletti faxed the following note to National Federation:

■ To show retaliation for taking FMLA-mandated leave or for challenging an employer's actions a plaintiff must prove: 1) the plaintiff availed herself of a right that is protected under the FMLA; 2) the plaintiff suffered an adverse employment decision; and 3) there is a causal connection between the plaintiff's protected activity and this adverse employment action. *See Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990) (stating elements of prima facie case in Title VII context); *Jeremy v. Northwest Ohio Dev. Ctr.*, 33 F.Supp.2d 635, 639 (N.D.Ohio 1999) (citing *Canitia* and stating elements of prima facie case in FMLA context).

■ On September 21, 1999, Soletro began her twelve weeks of FMLA leave. Additionally, there is no dispute that Soletro's forced transfer to a membership representative position was an adverse employment action. However, the timing of the reduction in Soletro's job duties shows that there is no material evidence showing a causal connection between the two events.

In her September 20 letter, Barratt offered Soletro a membership representative or a contingent representative position because she was not meeting her production goals as a territory manager.[10] Soletro was not hospitalized until September 21,

1999. Barratt communicated her decision to change Soletro's position one day *before* Soletro went into the hospital. Barratt did not change Soletro's position because she took FMLA leave since Barratt decided to demote Soletro before she required leave.

Although Barratt wrote Soletro on September 23, 1999, this additional letter merely confirms the message of the September 20 letter: Soletro's position at National Federation would change because she did not meet her production goals.[11] Earlier correspondence between Barratt and Soletro shows that Soletro's performance and productivity were concerns throughout the summer of 1999. Barratt had communicated to Soletro that unacceptable levels of performance would affect her status as a territory manager.

The fact that her demotion became effective on September 27, 1999, a week after Soletro went on FMLA leave, is irrelevant. Soletro has failed to establish a causal connection between her taking twelve weeks of medical leave and the change in her job position. National Federation is entitled to judgment as a matter of law on Soletro's claims of retaliatory demotion and retaliatory discharge under the FMLA.

C. Americans' with Disabilities Act

Under the ADA, it is unlawful for an employer to discriminate against a quali-

---

**10.** Barratt's letter to Soletro states, in pertinent part:

The Thirteen Week Plan is a production strategy designed to achieve growth this quarter. Meeting it consistently during the year enables you to achieve growth in the territory and earn bonus. As stated in my letter to you dated June 14, 1999 your status as a TM, though, is dependent upon the successful completion of the thirteen week planner. Your current level of production is unacceptable for a Territory Manager and does not meet the specified goals. However, NFIB has other sales career opportunities available which may be more suited to your needs. *I would like to offer you the position of Member Representative or Contingent Representative and arrange a time when we could discuss this opportunity.* Flo, I look forward to speaking with you *to answer your questions about the Member*

*Representative and Contingent Representative contracts* and will call on Wednesday, September 22 at 9:00 p.m.
Defendant's Exhibit K (emphasis added).

**11.** The September 23rd letter states, in pertinent part:

*Per my letter to you dated September 20, 1999, your current level of production is unacceptable for a Territory Manager and we* were to discuss sales career opportunities with NFIB last night at 9:00 p.m. However, I was unsuccessful in my attempt to reach you by phone.
Therefore, this letter is to inform you that effective September 27, 1999, your position with NFIB will change from Territory Manager to Membership Representative.
Defendant's Exhibit L (emphasis added).

fied individual with a disability by discharging such individual or otherwise altering any other terms or conditions of her employment. 42 U.S.C. § 12112(a).

To state a claim under the ADA, a plaintiff must first establish a prima facie case of discrimination based on a disability. *Martin v. Barnesville Exempted Vill. Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 (6th Cir.2000). Once the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination or other adverse action. *Id.* If the employer meets this burden, the plaintiff must then show that the proffered reason is merely a pretext for discrimination. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

■ To establish a prima facie case under the ADA, and defeat a defendant's motion for summary judgment, a plaintiff must show: (1) he or she is "disabled" under the ADA; (2) he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; (3) he or she suffered an adverse employment action; (4) the employer knew or had reason to know of his or her disability; and (5) either the position remained open or plaintiff was replaced. *See Cehrs*, 155 F.3d at 779; *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir.1996).

■ The plaintiff bears the burden to demonstrate that he or she can perform the essential functions of the job. *Tyndall v. National Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir.1994). The Supreme Court has interpreted the meaning of "qualified individual" as someone who can meet all of the requirements of the job despite his or her disability. *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) (interpreting the meaning of "qualified individual" under § 504 of the Rehabilitation Act).

In addition, the EEOC has interpreted the term "essential functions" to mean the "fundamental duties" of the position. 29 C .F.R. § 1630.2(n)(1). "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir.1998) (quoting *Tyndall*, 31 F.3d at 213); *see also Weiler v. Household Fin. Corp.*, 101 F.3d 519, 525 (7th Cir.1996) (finding that employee who could not return to work in any position was unable to perform the essential functions of the job and thus was not a "qualified individual"); *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir.1996) (finding that an employee who was unable to work at the time of his discharge was not able to perform essential functions of his job and thus was not a "qualified individual with a disability" within meaning of the ADA).

■ In the present case, Soletro claims National Federation demoted and discharged her based on her disability. However, Soletro has failed to carry her burden to establish that she is a qualified individual who can perform the essential functions of the job. As discussed previously, Soletro admits in her deposition that she was unable to return to work on December 16, 1999, and she still is unable to return work. She cannot meet the attendance requirements of her position with National Federation. Thus, she cannot perform the essential functions of her job and has failed to establish that she is a "qualified individual" within the meaning of the ADA.

As Soletro cannot perform the essential functions of her job, there is no need for the Court to reach the other prongs of her prima facie case. National Federation is entitled to judgment as a matter of law on Soletro's claim under the ADA.

### D. Title VII

Soletro also claims her discharge violated Title VII. National Federation argues

that the Court does not have subject matter jurisdiction over the claim because Soletro did not first file an administrative charge.

In arguing that an administrative charge is a prerequisite to jurisdiction in this Court, Defendant National Federation is correct. "Federal courts do not have subject matter jurisdiction of Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." *Jones v. Sumser Retirement Vill.*, 209 F.3d 851, 853 (6th Cir.2000) (quoting *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998)). A claimant's written charge must be precise enough to identify the parties and generally describe the action or practices leading to the complaint. *Id.*

Neither of Soletro's EEOC filings alleges any violation of Title VII. On her charge filed with the Ohio Civil Rights Commission, Soletro only marked the disability box. While her description of events mentions her alleged disability and the FMLA, there is no allegation that her discharge was based on race, color, religion, sex, or national origin. Likewise, on Soletro's charge filed with the Tennessee Human Rights Commission she only marked the age, disability, and retaliation boxes. Her factual description does not mention events that give rise to a cause of action under Title VII.

 Soletro's previous EEOC filings do not make out a claim under Title VII. The Court does not have subject matter jurisdiction over Title VII claims that are not first filed in an EEOC charge.[12] The Court grants summary judgment to Defendant National Federation on Soletro's Title VII claim.

### E. Breach of Contract

Defendant National Federation argues that there is no factual dispute that Soletro was an at-will employee. The defendant further argues that Ohio law allows termination of at-will employees for any reason not contrary to law. Plaintiff Soletro argues that the praise and encouragement she received from management in 1998 and 1999 altered the terms of her contract so that she was no longer an at-will employee.

As a preliminary matter, the Court must decide the appropriate law to apply. In its motion for summary judgment, the defendant relies exclusively on Ohio law in discussing the breach of contract claim. The plaintiff does not cite any additional authority, but does discuss an Ohio opinion the defendant uses. However, under a section entitled Applicable Law and Complete Agreement, Soletro's employment contract states:

> This Employment Contract shall be governed by and construed in accordance with the laws of the State of Tennessee. In the event of any dispute arising under this Contract it is agreed between the parties that the law of the state of Tennessee will govern the interpretation, validity and effect of this Contract without regard to the place of execution or place of performance thereof.

Defendant's Exhibit B at 4.

 A federal court exercising supplemental jurisdiction is bound to apply the forum state's choice of law rules. *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir.1998). In contract actions, Ohio has adopted § 188 of the Restatement (Second) of Conflict of Laws. *Nationwide Mutual Ins. Co. v. Ferrin*, 21 Ohio St.3d 43, 44–45, 487 N.E.2d 568, 569 (1986); *National Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir.1992).

Section 188 only controls "in the absence of an effective choice of law by the parties (see [§ ] 187)." *See* Restatement

---

**12.** Additionally, Soletro has expressly abandoned her sex discrimination claim under Title VII.

(Second) of Conflicts of Laws § 188 (1969). Section 187 of the Restatement (Second) of Conflict of Laws states "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Whether Soletro is an at-will employee is an issue that an explicit provision in the employment contract could resolve. *See* Restatement (Second) of Conflict of Laws § 187 cmt. c (1989). The language of Soletro's employment contract states an effective choice of law under Restatement (Second) of Conflicts of Laws § 188. Therefore, the Court applies Tennessee law to Soletro's breach of contract claim.[13]

▆▆▆ Under Tennessee law, without a clear contractual agreement, either party in an employment agreement may terminate the relationship anytime, with or without cause. *See Bennett v. Steiner–Liff Iron and Metal Co.*, 826 S.W.2d 119, 121 (Tenn.1992); *Graves v. Anchor Wire Corp. of Tenn.*, 692 S.W.2d 420, 422 (Tenn.Ct. App.1985). To overcome this presumption, an agreement must use specific language guaranteeing a definite term of employment. *Loeffler v. Kjellgren*, 884 S.W.2d 463, 468 (Tenn.Ct.App.1994)(citing *Davis v. Connecticut General Life Ins. Co.*, 743 F.Supp. 1273, 1280 (M.D.Tenn.1990)).[14]

Plaintiff Soletro was an at-will employee. Her employment contract states:

**13.** This decision has little practical effect on the parties' arguments as Ohio and Tennessee law are essentially identical on this issue.

**14.** Ohio law is similar. In *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991), the Ohio Supreme Court's syllabus stated a similar rule:

1. Absent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook.
2. A promise of future benefits or opportunities without a specific promise of contin-

**VIII. *TERMINATION*** NFIB and Employee agree that this Contract may be terminated or modified at any time. In that regard, Employee understands, recognizes and agrees that nothing in this Contract or Exhibit A hereto changes or affects his/her status as an employee-at-will of NFIB which means that either party may terminate Employees's employment at any time for any reason or cause of for no reason or cause.

Defendant's Exhibit B at 2. The language of the contract is clear and not open to alternative interpretations.

▆▆▆ Furthermore, Soletro·produces no evidence of a promise that changes her at-will employment status or that National Federation will only release her for good cause. The documents Soletro submitted do not support her assertion that she was guaranteed employment as long as she met minimal sales goals.[15] The Court holds that Defendant National Federation is entitled to judgment as a matter of law on this claim.

### F. Intentional Tort

To establish a prima facie case of an intentional tort by an employer, an employee must demonstrate each of the following:

(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;

ued employment does not support a promissory estoppel exception to the employment-at will doctrine.
59 Ohio St.3d at 108, 570 N.E.2d at 1096–97 (citations omitted).

**15.** In addition, under the provision entitled Minimum Territory Production Standards, Soletro's employment contract warns "[f]ailure to consistently achieve the minimum territory production standards may result in disciplinary action, up to and including termination." Defendant's Exhibit B at 15. This statement merely informs the employee of possible consequences for not meeting minimum production standards, it does not guarantee employment for a definite term.

(2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and,

(3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Fyffe v. Jeno's, Inc.,* 59 Ohio St.3d 115, 118, 570 N.E.2d 1108, 1111 (1991). Soletro has not attempted to establish any of the elements of an intentional tort. More important, she does not even discuss this cause of action in her memorandum in opposition. Therefore, the Court treats the claim as waived and grants summary judgment to Defendant National Federation on this issue.

### VII. Conclusion

For the reasons discussed above, the Court grants Defendant National Federation's motion for summary judgment.

IT IS SO ORDERED.

### JUDGMENT

The Court has filed its Memorandum Opinion in favor of defendant in the above-captioned matter. The Court grants defendant's motion for summary judgment and dismisses the plaintiff's claims with prejudice. Accordingly, this action is hereby terminated under Fed.R.Civ.P. 58.

IT IS SO ORDERED.