RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0241P (6th Cir.)
File Name: 02a0241p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CINDY D. PREBILICH-
HOLLAND,
       *Plaintiff-Appellant,*

       *v.*

GAYLORD ENTERTAINMENT
COMPANY, d/b/a WSM Radio,
       *Defendant-Appellee.*

No. 00-5946

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-01060—William J. Haynes, Jr., District Judge.

Submitted: December 6, 2001

Decided and Filed: July 18, 2002

Before: SILER and BATCHELDER, Circuit Judges;
HOOD, District Judge.[*]

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

---

**COUNSEL**

---

**ON BRIEF:**    Mathew R. Zenner, BLACKBURN & McCUNE, Nashville, Tennessee, for Appellant.  Stephen P. Spann, J. Scott Hickman, SHERRARD & ROE, Nashville, Tennessee, for Appellee.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge.  Plaintiff Cindy Prebilich-Holland ("Prebilich") appeals the district court's grant of the defendant's motion for summary judgment in this action claiming a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(k).  Specifically, Prebilich claimed that her employer, Gaylord Entertainment Company ("WSM"), discriminated against her on the basis of sex when it terminated her employment two days after she informed her supervisor that she was pregnant.  The district court found that Prebilich had established a prima facie case of pregnancy discrimination as well as pretext, but granted summary judgment to WSM because WSM did not have knowledge of her pregnancy when it decided to terminate her employment.  We agree with the judgment but not the reasoning of the district court.  Accordingly, we will affirm, but for reasons different from those offered by the district court.

**BACKGROUND**

Cindy Prebilich-Holland began her employment with Gaylord Entertainment Company on March 14, 1995, and worked at the defendant's WSM radio station until November 26, 1997.  Originally, Prebilich was employed as New Business Assistant to Ginny Speaks.  On January 1, 1997, both she and Speaks were promoted, and Prebilich

has therefore wholly failed to present evidence from which the jury could infer that Padgett had any knowledge of her pregnancy at the time he decided to discharge her. Without evidence to support even an inference that Padgett had knowledge of the pregnancy when he made that decision, Prebilich cannot establish any nexus between her pregnancy and the adverse employment decision, the fourth prong of a prima facie case of pregnancy discrimination.

## CONCLUSION

For the foregoing reasons, we conclude that Prebilich has failed to present evidence sufficient to establish a prima facie case of pregnancy discrimination. Accordingly, we affirm the judgment of the district court dismissing the complaint.

assumed the position of New Business Development Coordinator.

In July 1997, Speaks resigned her position to start her own business, and Prebilich decided to resign at this time as well. Until this point in her employment with WSM, Prebilich had received satisfactory performance evaluations, and none of her supervisors had expressed any concerns about her ability to perform her job.

Because WSM supervisors were concerned that the contemporaneous resignations of Speaks and Prebilich would disadvantage the clients with whom they worked, Supervisor John Padgett offered Prebilich some incentives to remain, including what he labeled as a $600 monthly "override" above her normal salary in exchange for her accomplishing a list of five extra goals, and $100 additional per month out of his personal funds. Padgett said that this arrangement would be reevaluated after approximately four to five months.

Prebilich accepted the offer, and almost immediately WSM began to receive complaints about her performance. Padgett learned, for example, that Prebilich had socialized rather than performing her duties at a WSM-sponsored Vanderbilt tailgate party; had failed to appear at a celebrity race to open the gate for a client; generally arrived late to meetings; missed deadlines; and took excessively long lunch breaks. Padgett also received reports that clients and support staff refused to work with her. In spite of these performance problems, Prebilich received all of her monthly bonuses.

At an unspecified time in late September or early October 1997, Padgett and another supervisor, Tom Laffey, met with Prebilich to discuss her performance. The three met again in late October or early November, at Prebilich's prompting. At that meeting, Prebilich admitted that she had "checked out for a short period of time" and that "[her] head was not 100 percent in the game," but that she would try harder. She also

conceded that she had been interviewing with another radio station.

WSM's normal discipline procedure involves a four-step process. First, the employee is given a verbal warning; the next offense results in a written warning; for a third offense, the employee receives a final written notice. If there is another offense, the employee is terminated. Prebilich received a verbal warning, but WSM did not follow steps two through four of this procedure with her. Rather, when Prebilich's performance did not improve, her supervisors met privately to discuss initiating termination procedures. Prebilich's personnel file reveals that Padgett called the human resources department on November 20, 1997, to begin the termination process. The stated reason for termination was "work quality," and the discharge was scheduled to occur on November 25, 1997. Prebilich admits that she does not know when the decision to terminate her was made.

Sometime during the week prior to the Thanksgiving holiday week, roughly between November 15 and 17, Prebilich learned that she was pregnant. She shared this news with her co-workers Lisa Kay and Jim Knott, but she does not believe that they told Padgett or Laffey or anyone else at WSM.

On Monday, November 24, 1997, Prebilich informed Padgett of her pregnancy and told him that she would be needing time off for doctor's appointments. Padgett discharged her on November 26, 1997. In a memo dated November 26, Padgett states that Prebilich was terminated for failure to improve her performance, for untimely work product, and for lack of attention to her projects.

After he discharged Prebilich, Padgett placed at least three memoranda in her file. The first is a two-page, undated document detailing specific dates and instances of Prebilich's insubordination. The second is dated December 1, 1997, and reflects unsolicited comments by WSM salespeople who were

not know she was." *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1006 (7th Cir. 2000) (italics in original).

Our review of our *Haman* decision, the ADA cases and the law of other circuits addressing the issue leads us to the conclusion that in order to establish the fourth prong of a prima facie case of pregnancy discrimination, that is, that there is a nexus between the employee's pregnancy and the adverse employment action, the employee bears the burden of demonstrating that the employer had actual knowledge of her pregnancy at the time that the adverse employment action was taken.

### 3. Whether WSM had knowledge of Prebilich's pregnancy

Prebilich has offered no evidence whatsoever that the decision-makers at WSM had actual knowledge of her pregnancy at the time they made the decision to discharge her. Prebilich concedes that she does not know when that decision was made, and Padgett's testimony that he initiated the termination process on November 20, 1997, four days before he learned of Prebilich's pregnancy, is unrefuted. And Prebilich admits that she has no reason to believe that Padgett knew of her pregnancy prior to November 24, 1997. She offered no evidence that her two co-workers who had knowledge of her pregnancy had shared that information with anyone in the office, and in fact, Prebilich admits that she does not believe that they did.

Prebilich argues that her discharge so closely followed her advising Padgett of her pregnancy that the jury would be entitled to infer that the two were connected. But that is not the inference that is material here. The temporal proximity between Prebilich's revelation of her pregnancy to Padgett and Prebilich's being told of her discharge does not support an inference that Padgett had knowledge of the pregnancy when—several days before Prebilich told him she was pregnant—he made the decision to discharge her. Prebilich

demonstrating that the individual who made the decision to dismiss the employee in fact knew of the pregnancy. *Haman v. J.C. Penney Co.*, Nos. 89-5329, 89-5458, 1990 WL 82720, at *5 (6th Cir. June 19, 1990) (unpublished).

In the context of an action under the ADA, we have held that to establish a prima facie case of discrimination, the employee must prove that the employer had knowledge of the disability. For example, in *Fisher v. Trinova Corp.*, No. 96-3918, 1998 WL 774111 (6th Cir. Oct. 13, 1998) (unpublished), we held that an HIV-positive employee who failed to demonstrate that his employer had knowledge of his HIV-positive status did not establish a prima facie case of discrimination. *Id*. at *4-5. Similarly, we held that a police officer who suffered from reflex sympathetic dystrophy had failed to establish a prima facie case because he did not present evidence that at the time his employer fired him, the employer knew or believed that he was disabled or knew of the officer's symptoms which were caused by the disability. *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 844 (6th Cir. 1996); *see also Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996) (recognizing the importance of the employer's knowledge of the disability).

Other circuits have held that a pregnancy discrimination claim cannot succeed in the absence of evidence of the employer's knowledge of the pregnancy. In *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578 (3rd Cir. 1996), the Third Circuit stated that "[i]f the pregnancy is not apparent and the employee has not disclosed it to her employer, she must allege knowledge and present, as part of her prima facie case, evidence from which a rational jury could infer that the employer knew that she was pregnant." *Id*. at 581. The Seventh Circuit recently held—albeit in a case in which the plaintiff proceeded under the direct evidence method of proof—that a claim of pregnancy discrimination "cannot be based on [a woman's] *being* pregnant if [the employer] did

unsatisfied with Prebilich's work ethic and product. The third memo, dated December 16, 1997, details sixty-seven accounts on which Prebilich had failed to complete work. Prebilich's file also contains a memo dated November 26, 1997, provided by another supervisor, which lists nine areas of concern over Prebilich's performance.

Prebilich subsequently filed a claim with the EEOC and brought suit in federal district court alleging pregnancy discrimination pursuant to 42 U.S.C. § 2000e(k). The district court found that the proximity in time between Prebilich's disclosure of her pregnancy and her discharge, coupled with WSM's failure to follow its internal discipline procedures, were sufficient to establish a prima facie case and pretext. However, the district court held that Prebilich's claim was meritless because WSM articulated undisputed facts proving that its decision to terminate Prebilich's employment was made before any supervisors were aware of the pregnancy. The district court granted summary judgment in favor of WSM and Gaylord Entertainment. Prebilich timely appealed.

## ANALYSIS

### A.  Standard of Review

We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In reviewing a motion for summary judgment, we view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must show sufficient

evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Claim of Pregnancy Discrimination

#### 1. Elements of a prima facie case

Title VII prohibits an employer from discriminating against an employee "because of sex," which includes discrimination on the basis of pregnancy. 42 U.S.C. § 2000e(k). Like any Title VII case, a pregnancy discrimination claim in which the plaintiff does not claim to have direct evidence of the discrimination is analyzed under the *McDonnell Douglas* evidentiary framework, which requires that the plaintiff first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). To establish a prima facie case of pregnancy discrimination, the plaintiff must show that "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000).

We do not doubt that Prebilich established the first three prongs of her prima facie case. However, we are not so quick to conclude that Prebilich has presented evidence supporting the fourth prong of the prima facie case, that is, evidence from which a reasonable jury could infer that there was a nexus between her pregnancy and the decision to discharge her. "Nexus" means "connection" or "link." WEBSTER'S THIRD

NEW INTERNATIONAL DICTIONARY 1524 (1986). We think that the threshold question before us is whether, in order to establish a connection or nexus between the pregnancy and the discharge, Prebilich was required to present evidence that her employer had knowledge of her pregnancy when the decision to discharge her was made. Prebilich argues that because she was discharged only two days after she told Padgett she was pregnant, a reasonable jury could infer that her pregnancy was the reason for her discharge. But the facts here demonstrate that the decision was made before—not after—the employer learned of the pregnancy, and the inference urged by Prebilich begs the question of the employer's knowledge of the pregnancy at the time material to this inquiry.

#### 2. The employer's knowledge as an element of the nexus requirement

Unlike race and gender, early pregnancy is not an obvious condition. Rather, a woman in the early stages of pregnancy is more like an employee who suffers from a disability or illness that has no noticeable symptoms. An employee who is HIV positive, for example, may exhibit no outward manifestation of the illness until it reaches its later stages, and it is entirely possible for an employer to terminate such an employee without having any knowledge of the disability. Similarly, an employer may well have no knowledge of the early stages of an employee's pregnancy unless the employee has made her circumstances known to the employer or the pregnancy directly affects the employee's ability to perform her job.

This circuit has not expressly addressed the question of whether an employer must have actual knowledge of an employee's pregnancy to be liable for pregnancy discrimination under Title VII. We have held, however, in an unpublished opinion, that an employer's defense of lack of knowledge of the pregnancy in a pregnancy discrimination case failed because the record contained evidence