NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name:  14a0931n.06

Case Nos. 14-5389

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Dec 16, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PATRICIA L. SLAPAK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| TIGER MANAGEMENT GROUP, LLC, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:  BOGGS and GRIFFIN, Circuit Judges; HOOD, District Judge.[*]

**HOOD**, District Judge.

Plaintiff-Appellant Patricia L. Slapak seeks reversal of the district court's grant of summary judgment in favor of Defendant-Appellee Tiger Management Group in her suit for gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The district court found that Slapak failed to establish a *prima facie* case for discrimination and could not show that Defendant's legitimate non-discriminatory reason for termination was a pretext. For the following reasons, we **AFFIRM** the judgment of the district court.

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

**I.**

Patricia Slapak became an employee of ExxonMobil in 1988 and by 2010, she worked there as a merchandising specialist. Tiger Management Corporation was formed in 2010 to purchase twenty-six of Exxon's retail convenience stores in Nashville and the surrounding area. The company was owned by five men: Lyle Finley, Greg Merriman, Mike Campbell, Arnold Tackett, and Marlin Larson. The purchase was completed on July 22, 2010. The purchase agreement required Tiger Management to retain "above-site" employees for the one-year period following the sale. This group of five included Slapak and four other women. Slapak was offered employment as the corporation's Director of Marketing, which she accepted and began on the day following the sale, July 23, 2010. Slapak's supervisor was Mike Campbell, who was a partial owner of Tiger Management as well as its Director of Operations.

In November 2010, Tiger Management began negotiations to purchase additional stores in Louisiana from ExxonMobil. Mike Campbell testified that he originally intended for Tristan Anowar, a former colleague of his, to join the company and run the operations in Louisiana, assuming a successful acquisition. In March 2011, Anowar was offered an ownership interest in Tiger Management, as well as a starting salary of $150,000. He accepted and was given the title "Vice President of Operations." However, Tiger Management subsequently learned that its bid for the Louisiana stores was unsuccessful. Around this time the company also reviewed its six-month financial report and discerned that it was performing below expectations. At this point, the parties' versions of the facts diverge.

According to Tiger Management, the owners then met to discuss what should be done to improve the company's financial performance. They decided to eliminate all mid-level management positions, with the owners taking on these additional responsibilities. The group

determined that Anowar would absorb the marketing duties while Campbell would absorb the operational functions. At the expiration of the one-year period required under the purchase agreement with Exxon in July 2011, Slapak was notified that her position as Director of Marketing was being terminated, along with the positions of two other former female Exxon employees, both middle management.

According to Slapak, the decision to hire Tristan Anowar was to replace her and ensure an all-male management team. She argues that she was fired because she is a woman and describes a contentious relationship with her employer during her tenure at Tiger Management. Slapak alleges that Campbell undermined her and made her job more difficult by, among other things, meeting with vendors and changing her plans without her knowledge and refusing to turn over profit-loss statements that were critical information to her. Campbell told Slapak that her work was not up to his standards and criticized her in front of others. He reportedly would yell, cuss, and speak harshly to his employees as well. After Anowar was brought in, Slapak testified that she heard him speaking with Campbell in the office with the doors open, disparaging one of her recent suggestions and referring to her as "stupid." Slapak complained of this incident in an email to Campbell, saying that she felt it would not have happened if she were male. She testified that her supervisors were upset that she had written the email as it could look like discrimination.

Slapak felt that Campbell was unhappy having women work for him and thought they were unable to do the job. She believed he resented the five former Exxon employees, all women, because their salary was too high and their work ethic differed from his. She describes "night rides," in which she and others accompanied Campbell on trips to the company's stores

until 11pm or midnight. Slapak claims that female employees were always expected to go along, but that the male employee did not go on three out of the five trips.[1]

Slapak also points to the testimony of another owner, Lemming, who explained that he told Slapak she should stay out of human resources issues in the stores and refer these matters to him. He testified that her function was not as "social director," but that Slapak and others in the store "liked to talk and gossip." Slapak noted that she was required to work in a cubicle space at the company's headquarters and was passed over when an office became available.

On November 13, 2012, Slapak filed suit in the United States District Court for the Middle District of Tennessee. Tiger Management moved for summary judgment and in February 2014, the district court granted Tiger Management's motion and dismissed Slapak's claim. She appealed to this court on March 28, 2014.

## II.

This court reviews *de novo* a district court's grant of summary judgment. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648 (6th Cir. 2012). Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant must then present sufficient evidence from which a jury could reasonably find in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The court must

---

[1] On appeal, Slapak again refers to her deposition testimony in which she recounts a conversation she had with a store employee and relays this employee's opinions of Mike Campbell. The district court did not include this evidence in its analysis, and thus this court assumes it did not consider it in its opinion. Regardless, such evidence is hearsay and the district court properly disregarded it, as will this court. *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1189 (6th Cir. 1997)) ("'[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence ... must be disregarded.'").

consider whether, drawing all reasonable inferences in favor of the non-movant, the movant must prevail as a matter of law. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). However, a mere scintilla of evidence in support of the non-moving party's position will be insufficient to defeat a motion for summary judgment; there must be evidence on which the jury could reasonably find for the non-moving party. *Tingle*, 692 F.3d at 529 (citing *Anderson*, 477 U.S. at 251).

### III.

When a plaintiff alleges, based on circumstantial evidence,[2] that she suffered disparate treatment in violation of Title VII, we analyze her claim using the *McDonnell Douglas* burden-shifting analysis. *Davis v. Cintas Corp*., 717 F.3d 476, 491 (6th Cir. 2013); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973). Under this framework,[3] Slapak must establish a *prima facie* case of discrimination. *Davis,* 717 F.3d at 491. If Slapak is successful, the burden then shifts to Tiger Management to articulate a legitimate, nondiscriminatory explanation for its employment decision. *Id.* Once Tiger Management offers its explanation, the burden shifts back to Slapak to show that Tiger Management's explanation was mere pretext for discrimination. *Id.*; *see also White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The district court awarded summary judgment in favor of Tiger Management, holding that Slapak failed to establish a *prima facie*

---

[2] In general, a Title VII plaintiff may prove discrimination by direct or circumstantial evidence. *See Wexler v. White's Fine Furniture, Inc*., 317 F.3d 564, 570 (6th Cir. 2003) (internal quotations and citations omitted). Slapak has provided no direct evidence of gender discrimination, so we examine her circumstantial evidence.

[3] At various points in her brief, appellant refers to this as a mixed-motive case. "Title VII mixed-motive claims are reviewed using a more plaintiff-friendly standard on summary judgment, not the *McDonnell Douglas* framework." *Davis v. City of Clarksville*, 492 F. App'x 572, 579 n.7 (6th Cir. 2012) (citing *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 400–02 (6th Cir. 2008)). However, Slapak appears to use the *McDonnell Douglas* standard when framing her argument. Regardless, Slapak presented her claims before the district court as single-motive, both in her complaint and in her opposition to Tiger Management's motion for summary judgment. Thus, it was proper for the district court to analyze Slapak's claims according to that framework. Furthermore, we do not treat her claims as mixed-motive, and apply the *McDonnell Douglas* test for single-motive claims.

case of gender discrimination and, nevertheless, did not meet her burden to show Tiger Management's proffered reason was a pretext for gender discrimination.

## A.

To establish a *prima facie* case of discrimination under Title VII, Slapak must show that 1) she is a member of a protected class; 2) she was qualified for the job and performed it satisfactorily; 3) despite her qualifications and performance, she suffered an adverse employment action; and 4) she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of her protected class. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014).

The test is modified if the circumstances surrounding the termination are based on a work force reduction. *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 661 (6th Cir. 2013) (citing *Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir. 1990)). The Sixth Circuit has previously addressed what constitutes a work force reduction case:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes*, 896 F.2d at 1465. The parties disagree as to whether the instant matter is such a case. Slapak argues that she was replaced by Anowar and, therefore, her termination was not a result of a reduction in force. The district court found that Anowar did not replace Slapak, but absorbed her duties and thus, there was a work force reduction.

We agree. It is undisputed that Tiger Management found itself in financial difficulty around April or May of 2011 when its Louisiana bid fell through and it reviewed the six-month financial report. According to Tiger Management, the decision was then made to eliminate all mid-level management, including Slapak, and for the owners to take on additional duties to conserve resources. According to Slapak, her termination occurred because her employers wished to replace her with Anowar. In support, she points to Merriman's testimony that the owners discussed firing Slapak at the same time they discussed hiring Anowar, in April 2011. Notably, Anowar's offer letter is dated March 16, 2011. However, even if we assume that the discussion about hiring Anowar was made at the same time the owners discussed firing Slapak, this alone does not establish that Anowar was hired to replace Slapak because their job responsibilities were distinct. Tiger Management had two departments: operations and marketing. Anowar's offer letter states specifically that he will assume a position as "Vice President of Operations," while Slapak was Director of Marketing. Furthermore, the parties do not dispute that the original basis for hiring Anowar was so he could run the company's *operations* in Louisiana, while Slapak had been approached to head the company's *marketing* in Louisiana if necessary.

Slapak also argues that if Tiger Management intended to save resources and this truly was a reduction in force case, it would not have hired Anowar at a higher salary ($150,000 annually) than Slapak ($111,000 annually). Similarly, this argument is unavailing. The decision to bring in Anowar, as illustrated in the letter dated March 16, 2011, preceded the news of the company's failed bid and its financial difficulty in April or May of that year, leading to its ultimate decision to eliminate positions. Further, the reduction in force was not merely the elimination of Slapak's position, but the entire level of middle management, which led to more

cost savings than Slapak's argument takes into account. Regardless, "it is inappropriate for the judiciary to substitute its judgment for that of management." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000). Tiger Management may approach its reduction in force as it sees fit, and Slapak has failed to establish facts sufficient to suggest that her termination was unlawfully motivated. Thus, the Court concludes that this situation constitutes a work force reduction case.

In a work force reduction case, the last prong of the *McDonnell Douglas* framework is modified to require the plaintiff to show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465.[4] The district court found that Slapak failed in this fourth prong to establish a *prima facie* case of gender discrimination because she failed to produce even circumstantial evidence indicating that her employer singled her out because of her gender.

We agree with the district court. As evidence of gender discrimination, Slapak responds that all middle managers, who were women, were fired, and all of the individuals replacing them were men. Tiger Management contends that it decided to eliminate all of the middle management positions as part of its plan to reduce the work force. Thus, while all of those eliminated may have been women, they were not eliminated because they were women, but because they were middle management. Further, although all of those who later assumed the middle management

---

[4] The district court construed the standard as requiring plaintiff to prove the fourth prong of the *McDonnell Douglas* standard (that she was replaced or that she could identify a comparator who was treated differently) in addition to the heightened showing for reduction in force cases explained in *Barnes*. However, for purposes of clarity, the heightened *Barnes* standard in reduction in force cases is required *instead* of the typical fourth prong elements. *See Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 487 (6th Cir. 2012) (quoting *Barnes*, 896 F.2d at 1465) ("[W]hen a plaintiff is terminated in the context of a RIF, that [fourth] element need not be shown; rather, the fourth element of *McDonnell Douglas* is modified (heightened) to require some 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'"). This is consistent with the reasons articulated in *Barnes* for the plaintiff's burden in work force reduction cases. 896 F.2d at 1465 ("Our conclusion [that a heightened standard is necessary] would not change even if a plaintiff additionally demonstrated that [non-minority] persons were retained in other jobs which the plaintiff was qualified to perform").

responsibilities were men, this is because all of the owners were men, and the owners planned to assume the jobs of the middle management to spread out the work and save resources. This composition is simply not enough, standing alone, to indicate that it is a result of illegal discrimination.

Slapak also contends that Campbell undermined her in front of clients and peers and responded inappropriately to her email complaint. After Anowar joined the company, Slapak felt as though she was treated as his assistant, despite having ten years' experience in her role. Slapak notes that her office space remained a cubicle for the year even though office space opened up. While these facts indicate this working relationship was not cohesive, none suggest that Slapak was being singled out because of her gender.

On the other hand, there is Lemming's comment that Slapak and others liked to gossip and Slapak's contention that male employees did not go on the majority of the "night rides" with Campbell. Slapak also relays her conversation with Mike Campbell in which she said, "I bet you would really have a difficult time working for a woman," and Campbell purportedly replied, "Well, I guess I would." However, this evidence is not enough to sustain Slapak's burden. Lemming's comment refers to others in the store, and thus does not show that his feelings that Slapak was a gossip originate in his bias against her as a woman. That a male employee missed a required event could indicate a culture of giving males preferential treatment, but in this instance the male employee missed three of five, and thus this evidence is not very persuasive. Likewise, although Campbell's comment may evidence his feelings towards women, without more it is not enough for a jury to reasonably find in Slapak's favor.

Slapak has not provided sufficient additional evidence that shows Tiger Management terminated her position because she is a woman. The district court was correct to hold that Slapak failed to establish a *prima facie* case of gender discrimination.

**B.**

The district court also found that, even if Slapak could establish a *prima facie* case, her evidence was insufficient to show that Tiger Management's explanation for her termination was pretextual. Once the employer has offered a legitimate, non-discriminatory reason for the plaintiff's termination, "the burden shifts back to the plaintiff to show pretext—i.e. that the employer's explanation was fabricated to conceal an illegal motive." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). In order to meet her burden, Slapak "must produce sufficient evidence from which a jury could reasonably reject [Tiger Management's] explanation of why it fired her." *Id*. "A plaintiff may show pretext by demonstrating: '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the adverse employment action], or (3) that they were insufficient to motivate [the adverse employment action].'" *Davis*, 717 F.3d at 491-92 (quoting *Hedrick v. W. Reserve Care Sys.,* 355 F.3d 444, 460 (6th Cir. 2004)).

The district court found that Slapak's evidence of pretext was insufficient because it was based solely on her own deposition testimony. Indeed, this court has found that a plaintiff's reliance on her own beliefs and opinions is not sufficient to show pretext. *See Snyder v. Pierre's French Ice Cream Co.*, No. 13-3382, 2014 WL 5368867, at *3 (6th Cir. Oct. 22, 2014) (quoting *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986)) (finding that an employee's "'personal beliefs, conjecture and speculation'" about his employer's bias was not enough to prove age discrimination); *see also Adams v. Tenn. Dep't of Fin. & Admin.*, 179 F. App'x 266,

274 (6th Cir. 2006). We can, however, identify some factual support in Slapak's contentions, and will address them here.

Slapak's argument on the issue of pretext, both before the district court and on appeal, appears to be that Tiger Management's explanation lacks a basis in fact because Anowar was hired and paid a higher salary than Slapak, while Tiger Management claims it was attempting to reduce costs. As we noted above, we find this argument unpersuasive to overcome Tiger Management's contention that it was reducing its workforce. The parties do not dispute that Anowar was offered an ownership interest in the company in a letter dated March 16, 2011. It is also undisputed that soon thereafter, but certainly, *thereafter*, in April or May of 2011, Tiger Management learned that its bid for the Louisiana stores was unsuccessful and that its six-month financial report reflected trouble. From these facts, it is apparent that Anowar joined Tiger Management before the company faced financial difficulty that led to its reduction in force. Thus, Anowar's hiring does not show that Tiger Management's reduction in force explanation lacks a basis in fact. Curiously, Slapak also notes in support of her argument that other owners assumed additional duties after Slapak and others left, and that these owners where not paid a higher salary. This fact only supports Tiger Management's explanation that it was reducing positions and expanding the role of the owners (without increasing their compensation) to conserve costs.

Slapak has not produced sufficient evidence from which a jury could reasonably reject Tiger Management's reduction in force explanation. We agree with the district court that Slapak failed to show pretext. Accordingly, we find that the district court correctly granted summary judgment in favor of Tiger Management.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**