NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0110n.06

Case No. 22-5574

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 02, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ERICKA PEACOCK JOHNSON, | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| EVOLENT HEALTH, LLC, | ) | |
| Defendant - Appellee. | ) | OPINION |
| | ) | |
| | ) | |

Before: COLE, GIBBONS, and READLER, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Following her termination, Ericka Peacock Johnson sued her former employer, Evolent Health LLC, alleging unlawful pregnancy discrimination under Kentucky law and interference and retaliation with her benefits under the Family Medical Leave Act ("FMLA"). Johnson appeals the district court's grant of summary judgment to Evolent on her claims and its partial denial of her motion to strike. Because Johnson does not establish a prima facie case of pregnancy discrimination and fails to establish pretext for Evolent's proffered reasons for terminating her, we affirm.

I.

Evolent Health LLC ("Evolent") provides administrative services for healthcare plans, including services related to payment and reimbursement. The company hired Ericka Peacock—now Ericka Peacock Johnson—as a Reimbursement Analyst in June 2018. Her responsibilities

included reviewing reimbursement issues submitted by Evolent's clients on its "ticket" system. DE 35-2, Johnson Dep., Page ID 1427.

Johnson worked remotely from Kentucky and reported to Senior Manager Clarice Maxwell. On Johnson's 2018 annual performance review, Maxwell rated Johnson's performance as a "2" out of a five-point performance scale. To address her performance issues, Maxwell communicated her concerns and scheduled one-on-one training sessions with Johnson beginning in September 2019. However, Maxwell again rated Johnson a "2" on her 2019 annual review, explaining that Johnson "still need[ed] to become more efficient and proficient in the ticket process" and "improve on fully investigating tickets and doing thorough reviews when initially reviewing and analyzing tickets." *Id.* at Page ID 1437, 1442, 1464-65. At the end of 2019, Maxwell intended to place Johnson on a performance improvement plan due to these performance issues.

In December 2019, Evolent started the process of disbanding its Reimbursement team as part of a company reorganization. Evolent's Vice President of Configuration, Heather Spencer, and its Vice President of Implementation, Mary Piecuch, offered Johnson the opportunity to transfer to the Configuration Team as a Configuration Analyst. Her new responsibilities would resemble those in her previous role. Johnson agreed to the transfer.

At the end of January 2020, Johnson reached out to Configuration Chief of Staff Blake Lawson to ask whether there were any updates regarding her transition to the Configuration team. Lawson told Johnson that she would get more information about her role in the next week or so. Although Lawson did not follow up, Marie Lindauer, who would become Johnson's supervisor on the Configuration Team, emailed Johnson on February 10, 2020, stating that she would share details about Johnson's transition when they were available. Lindauer confirmed that Johnson

would continue her reimbursement work but would start reporting to Lindauer for "manager issues" including time-off requests. DE 35-2, Johnson Dep., Page ID 1448, 1468. Lindauer began approving Johnson's paystubs, which reflected a pay increase in mid-February 2020.

Meanwhile, Evolent leadership had begun planning a reduction in force ("RIF"). On February 5, 2020, Director of Talent Kelly Riley and the Talent Team created a spreadsheet of employees who had received a "2" or lower on their 2019 annual performance review to be considered for termination based on performance. She put sixty-seven employees on the initial list, including Johnson. The list provided one column to note whether Evolent would be "comfortable with [the] impact" of terminating an employee, and one with space for leadership to comment. DE 40-10, Spreadsheet, Page ID 1260-61. Some comments supported retention, while others supported termination. Vice President of Talent Management Richard Ventimiglia shared the spreadsheet with Senior Director of Talent Solutions Melissa Gilliland and Vice President of Talent Patrick Devlin. He also shared it with Chief Operating Officer of Health Services Scott Fad, who added a column to note whether an India-based Evolent employee or US-based employee could backfill a terminated employee, if needed. Ventimiglia sent the revised list back to Gilliland on February 13, 2020. The list was finalized on February 21, 2020, and suggested thirty-three employees for termination, including Johnson. The day before the list was finalized, Riley advised Maxwell of Johnson's termination and requested that she conduct the termination because Johnson had not yet transitioned to the Configuration Team.

While Evolent leadership planned its RIF, Johnson requested time off. She emailed Lindauer on February 14, 2020, asking to take off February 20 and March 20. Lindauer followed up on Johnson's request that day, asking her "how important" it was for her to take those days off. DE 35-2, Emails, Page ID 1473. Johnson disclosed that she was pregnant with twins and needed

to attend medical appointments on both days requested. Based on their conversation, Johnson believed that Lindauer would tell Managing Director of Configuration Suzy Kambic about her pregnancy, but Lindauer does not recall telling anyone of Johnson's pregnancy.

Lindauer directed Johnson to contact Human Resources about maternity leave, which Johnson did that day. Johnson's email was directed to an inbox managed by Benefits Specialist Jennifer Waiters and her manager Kristine Dubois. Waiters responded to Johnson, asking for her estimated due date and providing details to Johnson regarding maternity leave. Waiters then added Johnson's name to a tracking spreadsheet for employees seeking maternity leave, which she managed (and to which her manager Dubois, and Dubois's manager Mara Jaffa, also had access). Waiters does not remember having any other discussions with Johnson or learning any additional details about her or her pregnancy.

On February 24, 2020, a meeting was conducted via phone call between Associate Director of Talent Solutions Cindy Hargett, Maxwell, and Johnson. Maxwell and Hargett told Johnson that her position was being eliminated. Confused, Johnson asked about her transition to the Configuration Team, but Hargett responded that "this" role was being terminated. DE 35-2, Johnson Dep., Page ID 1457. Johnson then disclosed that she was pregnant. Following Johnson's termination, Evolent did not hire any Configuration Analysts in the United States until 2021.

Johnson filed suit in state court in July 2020, alleging pregnancy discrimination under the Kentucky Civil Rights Act, Ky. Rev. Stat. §§ 344.030(8)(a), 344.040(1)(a), and retaliation and interference under the FMLA, 29 U.S.C. § 2615(a). Evolent removed the case based on federal question jurisdiction under 28 U.S.C. § 1331.

Discovery ensued. Johnson requested the production of the maternity tracking spreadsheet after learning about it in Waiters' deposition, but Evolent refused to provide an unredacted version. The district court partially granted Johnson's motion to compel production.

Following discovery but before production of this material, Evolent moved for summary judgment. Johnson opposed the motion and moved to strike portions of three exhibits attached to Evolent's summary judgment motion. She sought to redact the page of her deposition listing her birthday, redact the declaration of Evolent's counsel, Melissa Weiss, which explains the "last modified" date of several exhibits, and redact portions of Kelly Riley's declaration, which describes the RIF process and those who participated in it. Johnson also sought leave to file a supplemental response to the summary judgment motion to address information regarding Waiter's maternity tracking spreadsheet.

In its order granting Evolent summary judgment, the district court first construed Johnson's motion to strike as a request to redact. Although it granted Johnson's unopposed request to redact the page of her deposition listing her birthdate, the court determined that neither of the challenged declarations created a genuine issue of material fact. It therefore denied Johnson's motion to redact both declarations as moot and announced that its order did not rely on the challenged portions of the declarations. Further, the court also granted Johnson's unopposed motion to supplement.

The district court granted summary judgment to Evolent on all claims. It found that Johnson had not established a prima facie case of pregnancy discrimination or that Evolent's proffered reasons for terminating her were pretext. It similarly found that, even if Johnson could establish a prima facie case of FMLA retaliation or interference, she could not establish that Evolent's reasons for terminating her were pretextual. The district court entered judgment for Evolent. This appeal followed.

II.

We review the district court's denial of a motion to strike or redact a declaration for abuse of discretion. *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 560 (6th Cir. 2016). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, applies the law improperly, or uses an erroneous legal standard." *United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010) (citation omitted). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020) (quotation marks and citation omitted).

We review the district court's grant of summary judgment de novo. *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020). A movant is entitled to summary judgment if it shows that there is no genuine dispute of any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the nonmovant "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e)(3). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, we consider the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c).

III.

On appeal, Johnson contends that the district court abused its discretion in denying her partial motion to strike and that it improperly granted Evolent summary judgment on her claims of pregnancy discrimination and FMLA interference and retaliation. We review these arguments in turn.

1. **Denial of Motion to Redact**

Johnson argues that the district court abused its discretion by denying her motion to strike as moot because it relied on erroneous factual findings—the Weiss and Riley declarations—and made a clear judgment error. She also claims that Evolent continues to rely on these declarations on appeal. In response, Evolent argues that the district court correctly denied Johnson's motion as moot because the court did not rely on the challenged declarations on summary judgment. It denies committing any discovery violations and argues that any challenged actions it took during discovery were harmless. Finally, Evolent denies relying on these declarations on appeal, contending that Riley's position as a decisionmaker in the RIF process is not dispositive to Johnson's claims.

The district court did not abuse its discretion in denying Johnson's motion to strike the declarations because it expressly did not rely on their content. *See, e.g., Hamilton Cnty. Emergency Commc'ns Dist. v. Level 3 Commc'ns, LLC*, 845 F. App'x 376, 389–90 (6th Cir. 2021) (finding the district court's denial proper when it did not rely on challenged declaration to decide summary judgment). It is therefore immaterial whether Evolent improperly relied on these declarations to support its summary judgment motion. The court also determined that the declarations did not create genuine issues of material fact that would influence its decision on summary judgment. Thus, any conceivably improper denial of the motion was harmless; the court effectively granted Johnson the relief she sought by disregarding the substance of both declarations. *See, e.g., Reed v. City of Memphis*, 735 F. App'x 192, 197 (6th Cir. 2018) ("Because the district court disregarded the affidavits' content when ruling on the parties' motions for summary judgement, any conceivable error in failing to strike the filings was harmless."); *cf. Hicks v. Concorde Career Coll.,* 449 F. App'x 484, 487 (6th Cir. 2011) (finding, "at most," harmless

error by district court's failure to rule on motion to strike because "the exhibit was irrelevant to the claims at issue and the district court did not rely on it in adjudicating [the] summary judgment motion"). Similarly, we need not refer to nor rely on these documents to reach our decision on whether summary judgment is proper.

### 2. Pregnancy Discrimination Claim

Johnson asserts her pregnancy discrimination claim under the Kentucky Civil Rights Act ("KCRA"), which prohibits discrimination based on an employee's sex, including pregnancy. *See* Ky. Rev. Stat. §§ 344.030(8)((A), 344.040(1)(a). The KCRA is interpreted consistently with Title VII and federal law. *See Spees v. James Marine, Inc.*, 617 F.3d 380, 389 (6th Cir. 2010) (citing *Ammerman v. Bd. of Educ.*, 30 S.W.3d 793, 797–98 (Ky. 2000)). As Johnson supports her claim with circumstantial evidence, it is analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438, 442–44 (6th Cir. 2002) (applying *McDonnell Douglas* framework).

To survive summary judgment on a pregnancy discrimination claim, the *McDonnell Douglas* framework requires that Johnson first establish a prima facie case of discrimination by showing that (1) "she was pregnant"; (2) "she was qualified for her job"; (3) "she was subjected to an adverse employment decision"; and (4) "there is a nexus between her pregnancy and the adverse employment decision." *Id*. at 442 (quoting *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 658 (6th Cir. 2000)) (internal quotation marks omitted). If a prima facie case is established, the burden shifts to Evolent "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Martin v. Barnesville Exempted Vill. Sch. Dist. Bd. of Educ.,* 209 F.3d 931, 934 (6th Cir. 2000). Once a nondiscriminatory reason is asserted, the burden returns to Johnson to show that Evolent's proffered reason was pretextual. *Id.*

Evolent only challenges Johnson's ability to satisfy the fourth prong of the prima facie case test,[1] arguing that she cannot establish a nexus between her pregnancy and her termination because no one involved in Johnson's termination decision or the RIF process knew she was pregnant. Johnson argues that she can establish a nexus by showing that the Evolent decisionmakers were aware of her pregnancy at the time of her termination, which occurred days after the disclosure of her pregnancy.

Temporal proximity between the announcement of an employee's pregnancy and that employee's termination can sufficiently establish a nexus between the events. *See Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006). Even so, the individuals who decided to terminate Johnson must still have "had actual knowledge of her pregnancy at the time that the adverse employment action was taken" for a nexus to exist. *Prebilich-Holland*, 297 F.3d at 444.

The timing of the decision to terminate Johnson is disputed. Evolent asserts that the decision to terminate Johnson's employment was made when her name was initially added to the spreadsheet including all potential RIF terminations, one week before Johnson disclosed her pregnancy to Lindauer and Waiters. A reasonable jury, however, could find that the decision to terminate Johnson was made on February 20 or 21, when the list was finalized.

---

[1] The district court did not apply the heightened standard for RIF cases set out in *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990), requiring an employee terminated as part of an RIF to present "additional direct, circumstantial, or statistical evidence tending to indicate" that she was discharged for "impermissible reasons," because Evolent did not argue for its application. With a similar silence on appeal, we find it unnecessary to address whether the heightened standard is applicable, as Johnson's claims do not survive under either standard. *See, e.g., United States v. McKenzie,* 33 F.4th 343, 350 (6th Cir. 2022) (withholding resolution as to application of a lower versus heightened standard where plaintiff fails under either); *EEOC v. Lucent Techs. Inc.*, 226 F. App'x 587, 591 (6th Cir. 2007) (same as to RIF cases).

Despite the uncertain timing of Evolent's decision to terminate Johnson, the undisputed fact remains that no decisionmaker involved with the RIF process or Johnson's termination was aware of Johnson's pregnancy when the RIF spreadsheet was created *or* finalized. "An employer has notice of the employee's disability when the employee tells the employer that he is disabled." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999). Yet the only employees who knew about her pregnancy were Lindauer, whom Johnson told directly, and Waiters, whom she advised by email. Both testified that they did not recall sharing the news with anyone. *See Prebilich-Holland*, 297 F.3d at 444 (holding that the plaintiff lacked evidence to support an inference that a decisionmaker knew of her pregnancy, in part because coworkers with knowledge of the plaintiff's pregnancy did not share that information with anyone in the office). Even if Waiters' supervisor, Dubois, was also aware of Johnson's email because she also actively monitored the human resources inbox, Johnson offers no evidence that she was a decisionmaker in the RIF process.

But Johnson argues that Patrick Devlin and Melissa Gilliland, both with access to the HR email inbox, had "email notice" of her pregnancy disclosure and still influenced her termination decision through the RIF process. CA6 R. 15, Appellant Br., at 12. Alternatively, Johnson posits that Devlin and Gilliland's knowledge of Johnson's pregnancy can be attributed to the other decision makers involved in the RIF process under the cat's paw theory.

Johnson's argument about Devlin and Gilliland's "email notice" fails for several reasons. First, Johnson did not argue Gilliland's involvement before the district court and thus forfeits that argument here. *See City of Columbus v. Hotels.com, L.P.*, 693 F.3d 642, 652 (6th Cir. 2012). Second, no reasonable jury could find that Devlin was aware of Johnson's email or that he actively participated in the RIF process. Devlin declared that he did not actively monitor the HR email

managed by Waiter and Dubois, did not see Johnson's email disclosing her pregnancy, and only learned of Johnson's pregnancy after she initiated this litigation. After discovery, Johnson still can produce no evidence to the contrary. Johnson cannot therefore establish that Devlin had actual knowledge of her pregnancy by relying on his access to a shared inbox or spreadsheet managed by others. *See Clemente v. Vaslo*, 679 F.3d 482, 495 (6th Cir. 2012) ("'[M]ere speculation, conjecture, or fantasy' [is] insufficient to survive a motion for summary judgment.") (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). Further, Devlin testified that, while he was aware of the RIF, he did not participate in it as a decision maker. Johnson did not provide any evidence rebutting that testimony. We cannot reasonably infer that he both was aware of her pregnancy and that he played a larger role in the RIF process than the record reveals.

Johnson also fails to establish prima facie discrimination under the cat's paw theory. "In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Marshall v. Rawlings Co. LLC*, 854 F.3d 368, 377 (6th Cir. 2017) (quoting *EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 484 (10th Cir. 2006)) (internal quotation marks omitted). But the "predicate to cat's paw" is a demonstration of discriminatory animus: that "by relying on this discriminatory information flow, the ultimate decisionmakers 'acted as the conduit of the supervisor's prejudice—his cat's paw.'" *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 678 (quoting *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 877 (6th Cir. 2001)). Johnson does not allege that any subordinate employee, aware of her pregnancy or not, showed any discriminatory animus towards Johnson.

Because Johnson failed to show that any individual who participated in the RIF process knew she was pregnant at the time of her termination, and because she cannot show that any employee who *was* aware of her pregnancy showed any animus towards her or influenced the decisions of decision makers, she has not established a prima facie case of pregnancy discrimination.

Even if Johnson had established prima facie discrimination, her claim would still fail for failure to establish pretext. Evolent provided a legitimate, nondiscriminatory reason to include Johnson in the RIF and terminate her based on her negative performance evaluations. *See Stockman v. Oakcrest*, 480 F.3d 791, 802 (6th Cir. 2007) (stating that poor performance is a legitimate, nondiscriminatory reason for discharge); *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 539 (6th Cir. 2014) (finding that elimination of a position as part of an RIF was a legitimate, nondiscriminatory reason for termination). Johnson fails to satisfy her burden to establish that this reason was pretextual.

"[A] reason cannot . . . be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphases and quotation marks omitted). Specifically, a plaintiff may demonstrate pretext by showing that employer's nondiscriminatory reason (1) "had no basis in fact"; (2) "did not actually motivate the employer"; or (3) "was insufficient to warrant the adverse employment action." *Bailey v. Oakwood Healthcare, Inc.*, 732 F. App'x 360, 362 (6th Cir. 2018) (citation omitted). We evaluate Johnson's arguments for each factor.

First, Johnson argues that Evolent's performance justification lacks a basis in fact because only half of the employees initially listed on the RIF spreadsheet were ultimately terminated. We disagree. The final RIF list drew from those initially included on it; Evolent only terminated

employees who received at most a "2" on their evaluations; and Johnson received a "2" rating on her annual reviews in both 2018 and 2019. Her termination based on poor performance therefore has a basis in fact. *See, e.g.*, *Chen v. Dow Chem.*, 580 F.3d 394, 400–01 (6th Cir. 2009) (finding a basis in fact given the employee's history of performance problems); *Pio v. Benteler Auto. Corp.*, No. 21-1231, 2022 WL 351772, at *7 (6th Cir. Feb. 7, 2022) (noting that the termination of an employee with performance issues had a basis in fact, "even if other [retained] employees also had . . . performance issues").

Second, Johnson argues that her poor reviews did not motivate the termination or were insufficient to warrant such an action. She contends that her termination was not supported by any notes in the RIF spreadsheet, that she would have to be backfilled by a US-based worker, that she was successful enough to be offered a transfer to a new department, that she had never been on an improvement plan, and that Evolent eventually had to replace her position. However, not all employees terminated in the RIF had additional comments supporting their termination in the spreadsheet, and the comments in the spreadsheet supported either the retention *or* termination of an employee. Moreover, at least one other employee terminated in the RIF both lacked comments in the spreadsheet and needed to have a US employee backfill, if necessary.

Although Johnson asserts that she was successful enough to merit a transfer to a new position, the record reveals that the offer of a transfer was due to the company's reorganization, rather than her success. Indeed, other members of the Reimbursement Team were also transferred elsewhere, and we have otherwise found that "a plaintiff's reliance on her own beliefs and opinions is not sufficient to show pretext." *Slapak v. Tiger Mgmt. Grp., LLC*, 594 F. App'x 290, 296 (6th Cir. 2014) (citations omitted). Although Johnson's salary appears to have increased due to the transfer, her low performance rating and her supervisor's intention to place her on a performance

improvement plan weaken the notion that the transfer was due to her success, rather than reorganization. Further, while Johnson was not yet on an improvement plan, the RIF spreadsheet included other employees lacking any indication of being on such a plan.

Johnson also argues that Evolent's reasons for her termination shifted, supporting pretext. She argues that Maxwell and Hargett told her that her position had been eliminated, but in the instant litigation, Evolent changed its excuse to job performance. Relying on *Asmo v. Keane, Inc.*, 471 F.3d 588 (6th Cir. 2006), Johnson argues that the proximity of her termination and Evolent's inconsistent justifications sufficiently establish pretext. In response, Evolent argues that it had consistently maintained two reasons for her termination: "poor performance and a workforce reduction." CA6 R. 16, Appellee Br., at 23.

"An employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996), *amended on other grounds*, 97 F.3d 833 (6th Cir. 1996). In their meeting with Johnson, Maxwell and Hargett read aloud the following script:

> Thank you for coming today. The company continues to monitor its overall performance to meet our financial targets set for 2020. To operate as effectively as possible, we are making decisions on staffing within this department. This means that employment for some employees will be impacted. Your position unfortunately will be impacted with these decisions. I'm sorry to share that your role will not be continued beyond March 1 and your last working day will be today, February 24th. This was an extremely difficult decision, and I want to talk through the ways that we're here to support you.

DE 40-4, Maxwell Dep., Page ID 618-19.

Maxwell and Hargett therefore relayed to Johnson that monitoring Evolent's "overall performance" led to their staffing decisions, and, ultimately, the termination of Johnson's position. *Id.* And discovery revealed that Evolent did base its RIF on performance standards. Even reading the script in favor of Johnson and finding potential ambiguity as to whether Maxwell and Hargett

meant that "performance" or "staffing numbers" directly caused Johnson's termination, there is insufficient support to demonstrate that Evolent's reasons for terminating Johnson materially shifted between the termination and the commencement of the litigation. Johnson's reliance on *Asmo* is thus insufficient. In *Asmo*, the supervisor initially stated five reasons for Asmo's termination, but advanced only three of those reasons at Asmo's litigation. The two rescinded reasons were found to be false. "[T]he fact that the[se reasons] were later eliminated, and they happen to be the two reasons . . . that are false, [was] very suspicious" and led the *Asmo* court to conclude that the shifting justifications were evidence of pretext. *Asmo*, 471 F.3d at 596. Here, by contrast, neither the performance standards nor staffing justification is suspicious in light of the record. We do not find this to be evidence of pretext.

Johnson's last argument to support pretext relies on a spreadsheet showing instances of "suspicious, likely-discriminatory conduct from Evolent" where Evolent terminated forty-eight of 436 employees who disclosed pregnancies and requested FMLA leave. CA6 R. 15, Appellant Br., at 30. However, Evolent responds that the district court properly concluded that pattern or practice evidence is unavailable to assess an individual plaintiff's discrimination claim. Evolent is correct. Pattern-or-practice evidence is generally "inappropriate as a vehicle for proving discrimination in an individual case" because it does not evaluate individual hiring decisions. *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004) (citation omitted). It can support, however, an "otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework," although a plaintiff must still satisfy the *McDonnell Douglas* framework to prevail. *Id.* Johnson is unable to separately satisfy the *McDonnell Douglas* framework. Thus, this evidence does not raise a triable issue of fact nor does it allow Johnson's claims to survive summary judgment.

The temporal proximity of Johnson's disclosure of her pregnancy and her termination may be indirect evidence of pretext but cannot *alone* support pretext here. *Megivern v. Glacier Hills Inc.*, 519 F. App'x 385, 398 (6th Cir. 2013) (citing *Asmo*, 471 F.3d at 598). Even when the timing appears "suspect," it "must be accompanied by other, independent evidence of pretext for [the plaintiff] to succeed." *Id.* at 398; *see also Bell v. Prefix, Inc.*, 321 F. App'x 423, 431 (6th Cir. 2009) (quoting *DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 393–94 (6th Cir. 2005) (explaining that "suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence"). Because she cannot show that Evolent's justification lacked a basis in fact, did not actually motivate Evolent to terminate her, or was insufficient to warrant her termination, Johnson has failed to establish pretext.

### 3. FMLA Interference and Retaliation

Johnson next argues that Evolent unlawfully interfered with and retaliated against her exercise of rights and benefits under the FMLA by terminating her employment shortly after she contacted human resources about disability benefits and FMLA leave. As with her sex discrimination claim, we apply the *McDonnell Douglas* burden-shifting framework because Johnson presents indirect evidence of interference and retaliation. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 761-62 (6th Cir. 2012).

To establish a prima facie case of FMLA interference, Johnson must show that "(1) she was an eligible employee; (2) [Evolent] was an employer as defined under the FMLA; (3) [she] was entitled to leave under the FMLA; (4) [she] gave [Evolent] notice of her intention to take leave; and (5) [Evolent] denied [her] FMLA benefits to which she was entitled." *See id*. at 761 (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)). To establish a prima facie case of retaliation, Johnson must show that:

> (1) she was engaged in an activity protected by the FMLA; (2) [Evolent] knew that she was exercising her rights under the FMLA; (3) after learning of [Johnson]'s exercise of FMLA rights, [Evolent] took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Id.* (quoting *Killian*, 454 F.3d at 556).

Evolent did not argue before the district court that Johnson failed to establish a prima facie case of FMLA interference. It therefore forfeited the argument, and no miscarriage of justice will occur by declining to consider it. *See Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988). The burden therefore shifts to Evolent to establish a legitimate, nondiscriminatory reason for her termination. *Donald*, 667 F.3d at 762.

As in the pregnancy discrimination context, Evolent asserts that both the reduction in force and performance issues were reasons for discharging Johnson. Likewise, Johnson contends that she can demonstrate pretext for the same reasons underlying her pregnancy discrimination claim. But her reasons for finding pretext for pregnancy discrimination are equally unavailing in the FMLA context because at least one other similarly situated employee was terminated without having requested FMLA leave. And, as we have established, temporal proximity alone does not establish pretext. *See Megivern*, 519 F. App'x at 398. Nor can her pattern-or-practice evidence save her FMLA claims because the claims are not otherwise viable under *McDonnell Douglas*. *See id.* at 399. The same reasons apply to Johnson's FMLA-retaliation claim because, even if she were to establish a prima facie case, she cannot establish pretext. The district court did not err in granting summary judgment to Evolent on all of Johnson's claims.

## IV.

For the foregoing reasons, we affirm.